UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MITCHELL WINE,

    Plaintiff,

  v.

MERIT SYSTEMS PROTECTION BOARD, et al.,

    Defendants.

Case No. 25-cv-03336-JCS

**ORDER DENYING MOTION TO DISQUALIFY JUDGE**

Re: Dkt. No. 50

## I. INTRODUCTION

Plaintiff has brought a Motion to Disqualify Judge Under 28 U.S.C. § 144 ("Motion").

Section 144 provides, in relevant part:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

28 U.S.C. § 144. Pursuant to Civil Local Rule 3-14, a request for disqualification under this section is referred to the Clerk for random assignment to another judge only where the affidavit of bias is "neither legally insufficient nor interposed for delay." Civ. L. R. 3-14. For the reasons stated below, the undersigned concludes that Plaintiff's affidavit is legally insufficient and therefore, that the Motion may properly be decided by the undersigned. The Court further concludes that Plaintiff has not established that disqualification is warranted based on "personal bias or prejudice[,]" for the reasons set forth below.

## II. BACKGROUND

Plaintiff filed this case on April 15, 2025, originally naming only the Merit System Protection Board ("MSPB"), seeking review of a final decision of the MSPB in case number DA-

0752- 18-0116-C-5.  Dkt. no. 1, Compl.  at ECF p. 1.   On May 2, 2025, Plaintiff filed an amended complaint seeking review of a different MSPB decision, in case number DA-1221-24-0451-W-1. Dkt. no. 6, Amended Compl. at ECF p. 1. In his Amended Complaint, Plaintiff sued not only MSPB but also the U.S. Department of the Interior  ("DOI") and DOI Supervisor Chris Davidson in his "personal and professional capacities";  U.S. Department of Homeland Security ("DHS") and DHS Officer Adrian Henry in his "personal and professional capacities"; and the State of Arkansas and Officer John Crisman in his "personal and professional capacities." A summons attached to Plaintiff's "Proof of Service," dkt. no. 8, also lists Arkansas Governor Sarah Sanders as a defendant.  Dkt. no. 8 at ECF p. 10.

On June 25, 2025, the "Federal Agency Defendants" (MSPB, DOI, Chris Davidson in his official capacity, DHS, and Adrian Henry in his official capacity) asked the Court to continue the deadlines for conducting a Rule 26(f) and ADR conference until after resolution of a motion to dismiss it anticipated filing, citing judicial economy and failure to properly serve certain defendants.  Dkt. no. 10.  The Court granted that request, stating that the dates of the parties' Rule 26(f) conference, ADR process selection, initial disclosures under Rule 26(a) and General Order 71, and joint case management statement would be "determined based on the Court's resolution of Federal Agency Defendants' forthcoming motion to dismiss." The Court vacated the scheduled Case Management Conference, stating that it would be "reset as necessary."  Dkt. No. 11 ("June 26 Scheduling Order").

On July 8, 2025, Plaintiff brought a motion for relief from the Court's June 26 Scheduling Order, asserting that initial disclosures prior to the Court's consideration of Defendants' motions to dismiss were "indispensable."  Dkt. no. 15 ("Initial Disclosure Motion"). In particular, he asserted Defendants should by ordered to produce documents in connection with his allegation that "the [Department of Justice](via the U.S. Attorney) is conflicted in this matter due to their interest in maliciously prosecuting Plaintiff to conceal information in their possession related to the early parole of convicted spy Tai Shen Kuo." Initial Disclosure Motion at 2-3. The Court denied the Initial Disclosure Motion without prejudice to Plaintiff's renewal of his requests for discovery after Defendants' motion to dismiss was decided. Dkt. no. 20.

1    Between July 28, 2025 and August 5, 2025, three separate motions to dismiss were filed,
2    advancing a multitude of jurisdictional challenges. Dkt. nos. 22, 26, 29. Those motions were
3    noticed for hearing on September 2 and 10, 2025. Plaintiff then filed a Motion for Declaratory
4    Judgment and Injunctive Relief asking the Court to rule on the merits of his claims based on "all
5    pleadings to date." Dkt. no. 36 ("Declaratory Relief Motion"). That motion was filed on August
6    10, 2025, with briefing to be completed by September 2, 2025. Based on the Court's preliminary
7    review of the four pending motions, it concluded that there was significant overlap of issues and
8    that all of the motions should be heard together. Accordingly, on August 11, 2025, the Court set
9    all four motions for hearing on October 15, 2025 – the first available date on the Court's calendar.[1]

Between August 13 and 15, 2025, Plaintiff sent four emails to Ms. Galang, Judge Spero's Courtroom Deputy, seeking legal advice about the case. On August 14, Ms. Galang responded in an email stating:

> I have informed Judge Spero that you seek clarification regarding the initial disclosure obligations of some of the defendants in this case. He has asked me to advise you that any requests for clarification must be filed as a formal motion, consistent with the requirements of the Court's Local Rules.

Plaintiff responded with another email seeking legal advice, to which Ms. Galang responded (correctly): "I cannot give you any legal advice. Any request to the court must be made by formal motion on the docket. Thank you." At this point, Plaintiff began sending Ms. Galang a series of improper emails.

On August 15 at 12:21 pm, Plaintiff sent an email to Ms. Galang stating:

> Ms. Galang,
> Thank you for the response. Actually, you're paid by tax dollars to provide me with legal advice on such matters. What law, rule, or court guidance are you citing to in order to make the false claim that you "...cannot give..." me legal advice? Please provide your citations in reply to this email.
> Thank you,

---

[1] The Court also inadvertently set the initial case management conference on that date, contrary to its ruling in the June 26 Scheduling Order that the initial case management conference would be scheduled after the motions to dismiss were decided. The Court corrected that error in its September 11, 2025 order, docket no. 45, in which it moved the case management conference to January 14, 2026. If the pending motions are not decided by that date the Court may reschedule the case management conference to a later date.

>  Mitch Wine

On August 16 at 5:54 pm, Plaintiff sent Ms. Galang an email stating:

> Ms. Galang, this is not a trick question. Why are you prohibited from providing me with legal advice? Where did you get that advice? Because, if it came from Judge Spero, we might need to have a conference.
>
> Opposing counsels, y'all want to opine. Or?

On August 16 at 7:36 pm Plaintiff sent Ms. Galang another email, stating:

> I have requested legal advice, and my tax dollars fund your salary. You've claimed you cannot provide legal advice notwithstanding my payments to you. Please explain.

On August 15, 2025, Plaintiff filed a motion for "immediate" clarification regarding service of process on the individual defendants. Dkt. no. 38 ("Immediate Clarification Motion"). As the Court explained in an order issued three days later, that motion was not in compliance with the Court's Civil Local Rules. Dkt. no. 39 (August 18 Order"). Nonetheless, the Court ordered that the individual defendants file a response to the motion. August 18 Order at 1-2. The Court also ordered:

> . . . Plaintiff may not seek legal advice from Court staff. If Plaintiff desires legal advice regarding the prosecution of his case he must retain an attorney to advise him. Court staff are not authorized to provide legal advice to litigants. Furthermore, Plaintiff's excessive and improper emails impose a significant burden on the Court and will no longer be permitted. Going forward, Plaintiff is prohibited from emailing or telephoning Courtroom Deputy Jenny Galang for any reason. Any future communications with the Court must be made in filed documents. Further, Plaintiff may only file a document in this case if he has a reasonable and good faith belief that it is permitted under the Federal Rules of Civil Procedure and the Civil Local Rules of this Court.

*Id.* at 2. On September 11, 2025, the Court denied the Immediate Clarification Motion, declining to decide whether service on the individual defendants was proper and noting that although it was denying the motion, Plaintiff would not be barred from "asserting arguments concerning the propriety of service on the individuals in future motion practice so long as the arguments are raised only in a proper motion or opposition brief that is filed in accordance with the schedule of this case, the Federal Rules of Civil Procedure, the Civil Local Rules of this Court and the Court's civil standing orders." Dkt. no. 45.

4

1     In the meantime, Plaintiff continued to email the Court demanding rulings and other
2 actions in this case. On September 2, 2025 and September 10, 2025, he sent emails to
3 JCSPO@cand.uscourts.gov – a mailbox to be used only for proposed orders and courtesy copies
4 of filed documents. Plaintiff's September 10 email requested that a hearing be set on September
5 16 or 17, bypassing the requirements of this Court's Civil Local Rules governing administrative
6 motions and motions to expedite. And on September 11, 2025, Plaintiff sent an email to the Chief
7 Judge of this Court complaining that the case was "in limbo" due to the undersigned's "inaction."
8 On September 16, 2025, Plaintiff sent another email to the JCSPO mailbox demanding a ruling on
9 the Declaratory Relief Motion.
10     On September 12, 2025, Plaintiff filed a letter asking the Court to decide his Declaratory
11 Relief Motion on the papers without waiting for the scheduled October 15 hearing, asserting that
12 oral argument was not necessary. Dkt. no. 47. The Court denied the request, stating:

> Pursuant to Civil Local Rule 7-1(b), "[i]n the Judge's discretion, or upon request by counsel and with the Judge's approval, a motion may be determined without oral argument . . . ." Based on its preliminary review of the extensive briefing on Plaintiff's motion and the three pending motions to dismiss, the Court declines to exercise its discretion to vacate the motion hearing at this time.

17 Dkt. no. 48.
18     On September 18, 2025, Plaintiff sent another email to the Chief Judge asserting that
19 "Judge Spero is refusing to rule on the matter or provide any further guidance on what information
20 he is lacking that would be presented in oral arguments" and asking that the undersign be
21 "direct[ed] . . . to the docket for rulings." The Court then issued an order prohibiting "further
22 harassing email communications with the Court." Dkt. no. 49. The Court pointed to its August 18
23 Order stating that "Plaintiff's excessive and improper emails impose a significant burden
24 on the Court and will no longer be permitted." *Id.* The Court noted that that Order expressly
25 required that "[a]ny future communications with the Court must be made in filed documents" and
26 found that Plaintiff's continued emails violated this Court's August 18 Order and rose to the level
27 of harassment. *Id.*
28     Plaintiff filed the instant Motion on September 22, 2025. He contends this Court is biased

5

1   against him, citing the fact that the Court has not yet opened up discovery in the case and has
2   deferred the initial case management conference until after the motions to dismiss are decided, for
3   which he contends there is "no good cause" and shows "blatant bias." He further asserts that the
4   undersigned is biased against him based on its description of his emails to the Court as
5   "harassing[,]" which he calls "baseless defamation."

## III.  DISCUSSION

Under Section 144, "personal bias or prejudice" is established only if the alleged bias or prejudice "stems from an extrajudicial source and not from conduct or rulings made during the course of the proceeding." *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1387–88 (9th Cir. 1988). In *Toth*, for example, the affidavit of bias stated that the presiding judge had observed in open court that a litigant's attorney's "credibility with the judge [was] 'about zero[]' " and that "this counsel ha[d] been violating every court order of the magistrate and his court orders." *Id.* The court of appeals found that the affidavit was legally insufficient because the "bias or prejudice alleged arose from conduct during the judicial proceeding." *Id.* Accordingly, the court affirmed the order of the presiding judge denying the litigant's motion to disqualify. *Id.*

Here, all of the examples of bias cited by Plaintiff in his affidavit arise from conduct or rulings in this case. In particular, he points to the Court's rulings that discovery should await resolution of the motions to dismiss as a matter of judicial efficiency, its order refusing to exercise its discretion at this time to decide the Declaratory Relief Motion without a hearing and take the scheduled motion hearing off calendar, and orders addressing Plaintiff's improper conduct with respect to emails to Court staff related to this action. He also apparently alleges bias on the basis that the motion hearing was continued approximately one month to allow the Court to consider the extensive briefing that has been filed by multiple defendants on the pending motions to dismiss, which raise jurisdictional challenges that must be decided before the Court can consider granting *any* relief on Plaintiff's Declaratory Relief motion. In sum, Plaintiff has pointed to no bias or prejudice stemming from an extrajudicial source. Therefore, the affidavit of bias is legally insufficient.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated: September 24, 2025

JOSEPH C. SPERO
United States Magistrate Judge