1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| MITCHELL WINE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>MERIT SYSTEMS PROTECTION<br>BOARD, et al.,<br><br>　　　　　Defendants. | Case No.  25-cv-03336-JCS<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTIONS TO DISMISS AND<br>DENYING  PLAINTIFF'S MOTION<br>FOR DECLARATORY AND<br>INJUNCTIVE RELIEF; AND DENYING<br>AS MOOT MOTION FOR STAY BY<br>FEDERAL AGENCY DEFENDANTS<br>AND PLAINTIFF'S MOTION FOR<br>JUDICIAL ACTION**<br><br>Re: Dkt. Nos. 22, 26, 29, 36, 53, 58 |

## I.    INTRODUCTION

Plaintiff Mitchell Wine brings this case challenging decisions of the Merit Systems

Protection Board ("MSPB") and asserting related claims.  Presently before the Court are three

motions to dismiss (collectively, "the Motions to Dismiss"): 1) a motion to dismiss by MSPB,

Department of the Interior ("DOI"), Chris Davidson in his official capacity, Department of

Homeland Security ("DHS"), and Adrian Henry in his official capacity (collectively, "the Federal

Agency Defendants"), dkt. no. 22 ("Federal Agency Defendants' Motion"); 2) a motion to dismiss

by Defendant John Crisman, dkt. no. 26 ("Crisman Motion");  and 3) a motion to dismiss by the

State of Arkansas and Arkansas Governor Sarah Huckabee Sanders, dkt. no. 29 ("Arkansas

Motion").  In addition, Plaintiff has filed a Motion for Declaratory Judgment and Injunctive

Relief, dkt. no. 36 ("Declaratory Relief Motion"). The Court finds that these motions are suitable

for determination without a hearing and therefore vacates the October 15, 2025 hearing.  For the

reasons stated below, the Court GRANTS the Motions to Dismiss and DENIES the Declaratory

1  Relief Motion.[1]  Because the Court's rulings on these motions render moot the administrative

2  motion by the Federal Agency Defendants to stay this case pending the government shutdown and

3  Plaintiff's motion for judicial action pursuant to 18 U.S.C. § 3771, those motions are DENIED.

4  **II.      BACKGROUND**

5          **A.      The Complaint**

6          Plaintiff filed this case on April 15, 2025, seeking review of a final decision of the MSPB

7  in case number DA-0752- 18-0116-C-5 ("the 116 Case").  Dkt. no. 1, Compl.  at ECF p. 1.   On

8  May 2, 2025, Plaintiff filed a first amended complaint ("FAC") seeking review of a different

9  MSPB decision, in case number DA-1221-24-0451-W-1 ("the 451 Case"). Dkt. no. 6, FAC at ECF

10  p. 1. In the FAC, Plaintiff sues the MSPB;  DOI and DOI Supervisor Chris Davidson in his

11  "personal and professional capacities";  DHS and DHS Officer Adrian Henry in his "personal and

12  professional capacities"; and the State of Arkansas and state official John Crisman in his "personal

13  and professional capacities." A summons attached to Plaintiff's "Proof of Service," dkt. no. 8, also

14  lists Arkansas Governor Sarah Sanders as a defendant.  Dkt. no. 8 at ECF p. 10.

15          In violation of the Court's local rules, Plaintiff purports to incorporate by reference the

16  original complaint into the FAC.  FAC at ECF p. 2 ("Plaintiff adopts herein by reference his

17  original petition for review filed in this matter and brings forth that petition and its exhibits as if

18  pled in this complaint."); Civ.LR. 10-1 ("Any party filing or moving to file an amended pleading

19  must reproduce the entire proposed pleading and may not incorporate any part of a prior pleading

20  by reference."). He also requests that the Court "take judicial notice of Plaintiff case 23-cv-00158-

21  JEB in the U.S. District Court for the District of Columbia for additional factual background

22  information."  *Id.*

23          Plaintiff alleges in the FAC that he was "employed by Defendant Department of the

24  Interior as a wildlife biologist from May 2003 to April 2018 and the agency attempted to

25  unlawfully terminate [him] for his legitimate disclosures of waste, fraud, and abuse in December

26  2017."  FAC ¶ 2.  According to Plaintiff, "[o]n December 14, 2017, Defendants Adrian Henry and

27  _____

28  [1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28
U.S.C. § 636(c).

United States District Court
Northern District of California

1    John Crisman disassembled Plaintiff's privacy gate at the entrance to Plaintiff's property in Stone

2    County, Arkansas to gain unlawful access to Plaintiff's residence and most recent telework duty

3    station in his former duties as a biologist for the U.S. Fish and Wildlife Service." *Id.* ¶ 3. Plaintiff

4    alleges that he "was an adjudicated whistleblower at that time, and both Henry and Crisman were

5    acting at the behest of Defendant Chris Davidson as well as unnamed managers for Defendant

6    Department of the Interior who were advising Davidson." *Id.* ¶ 4. Plaintiff alleges that the

7    "unlawful entry" into his home was a "violation of 5 U.S.C. 2302(b)(14) as Defendants had

8    accessed Plaintiff's medical records prior to the breaking and entering of Plaintiff's property and

9    knew such an action would threaten life and property as was indeed the case." *Id.* ¶ 5. He alleges

10   that his "life was threatened," that his dog was "almost shot" and that the entry was without a

11   warrant, probable cause or invitation. *Id.* ¶ 6.

12        According to Plaintiff, "Defendant MSPB conspired with other named Defendants to

13   coerce Plaintiff into a 2018 settlement agreement [in the 116 Case] that forced Plaintiff into

14   medical retirement by disallowing discovery of email documents detailing planning aspects of the

15   2017 break-in at Plaintiff's property." *Id.* ¶ 7. Plaintiff alleges that DOI's "own agency-approved

16   health professional informed the agency its actions related to the felonious armed home invasion

17   and defiance of her reasonable accommodation requests were contrary to her recommendations

18   and were causing severe harm to Plaintiff." *Id.* ¶ 8. He further alleges that "[r]ather than use the

19   aforementioned medical information to ensure a healthy workplace environment for Plaintiff,

20   Defendants conspired to terminate Plaintiff from his duties due to a medical condition they

21   purposely induced and inflicted upon Plaintiff in reprisal and with malice aforethought." *Id.* ¶ 9.

22        Plaintiff alleges that "Defendant MSPB final decision in [the 451 Case] lacks legitimacy

23   given the facts of this case and the fact the MSPB has actively engaged in conspiracy with other

24   named Defendants to facilitate malicious prosecution of Plaintiff and unlawful imprisonment in an

25   Arkansas state prison." *Id.* ¶ 11.

26        Plaintiff alleges that "[t]he MSPB is allowing other Defendants to use the 2018 settlement

27   agreement as a non-disclosure agreement regarding violations of law by Defendants prior to

28   enacting the agreement and allowing Defendant Department of the Interior to use Plaintiff's

United States District Court
Northern District of California

1    medical condition(s) to preclude reinstatement to duty with the agency." *Id.* ¶ 12.

2    Plaintiff alleges that "[t]he state of Arkansas is conspiring with other Defendants to ensure

3    Plaintiff cannot access information described herein so that they may continue to maliciously

4    prosecute Plaintiff for disclosing waste, fraud, and abuse within federally funded state projects."

5    *Id.* ¶ 13.

6    Plaintiff requests that in this action, the Court "rescind the 2018 settlement agreement

7    between the parties of the agreement, allow full discovery, and conduct a jury trial regarding

8    Plaintiff's removal from his previous duties as a federal biologist, the legality of the 2018

9    settlement agreement, and the malicious prosecution described herein." *Id.* ¶ 14. "Alternatively,

10    Plaintiff requests the case be remanded to the MSPB for a hearing following full discovery of

11    documents presented as part this complaint and previous filings."[2] *Id.* Plaintiff alleges that he

12    "cannot obtain a fair hearing at the MSPB or within any Arkansas court as a result of the criminal

13    conspiracy detailed herein." *Id.* ¶ 16. Plaintiff seeks damages, including "all costs of bringing this

14    action" and requests "an addendum hearing to determine any further compensatory, consequential,

15    and/or punitive damages . . . ." *Id.* ¶ 15.

16    The FAC does not enumerate the specific claims Plaintiff seeks to assert or identify which

17    defendants are named on any particular claim. However, Plaintiff invokes federal jurisdiction "in

18    accordance with 5 U.S.C. § 7703(b)(2), 5 U.S.C.2302(b)(13) and (14), 18 U.S.C. [§§] 241 and

19    242, 42 U.S.C. [§] 1983, Section 501 of the Rehabilitation Act (29 U.S.C [§]791) and the Fourth

20    Amendment of the Constitution in conjunction with a directly appealable action (suitability action)

21    as part of the MSPB appeal for which review is sought." *Id.* at ECF p. 2.

22    **B.    D.C. Circuit Court Memorandum Opinion**

23    Plaintiff has asked the Court to take judicial notice of case 23-cv-00158-JEB in the U.S.

24    District Court for the District of Columbia ("the D.C. action")[3] "for additional factual background

---

[2] Numerous documents are attached to Plaintiff's original complaint, including what appear to be email communications produced in response to a Freedom of Information Act ("FOIA") request, with redactions.

[3] Although the Court refers to this case as "the D.C. Action" for convenience, it should be noted that this case was not the *only* case Wine brought in that court related to the same underlying events. He also brought Case No. 21-cv-3349 in that court. The court in that case dismissed a

4

information." FAC ¶ 1. In that case, Wine asserted claims that substantially overlap with the

claims he asserts in this case.  On July 17, 2024, the Court issued a Memorandum Opinion

summarizing the underlying facts of the case. [4]  Dkt. no. 10-3 ("Memorandum").  The court's

summary of the factual background states as follows:

> Between early 2003 and April 2018, Wine was employed as a biologist at the Fish and Wildlife Service within the Department of Interior. See ECF No. 1 (Compl.), ¶¶ 2, 22. At some point during his tenure, he learned that Interior had (in his view) unlawfully permitted a hog farm in the Buffalo National River Watershed of Arkansas despite risks to the environment and human safety. *Id.*, ¶¶ 9, 22. After making his concerns known to the Office of Special Counsel, Plaintiff was "forced into medical retirement." *Id.*, ¶¶ 10, 22. On December 14, 2017, just a few months prior to that untimely exit, federal and state officials — namely, Federal Protective Service Officer Adrian Henry and Arkansas Game and Fish Commission Officer John Crisman— entered uninvited onto Wine's private property in Arkansas to retrieve government-owned computer equipment that he had refused to relinquish. *Id.*, ¶¶ 2–3, 5–8.
>
> These events spawned three prior lawsuits in the Federal Circuit and our federal district court based on a range of grievances — including allegations of whistleblower retaliation by OSC and Interior's purportedly unsatisfactory response to his Freedom of Information Act request for records related to the December 2017 entry onto his property. *See Wine v. Merit Systems Protection Board*, 815 F. App'x 518, 518 (Fed. Cir. 2020); *In re Wine*, 820 F. App'x 1025, 1026 (Fed. Cir. 2020); *Wine v. Dep't of Interior*, 2022 WL 3715799 (D.D.C. Aug. 29, 2022). In the instant action, which commenced in January 2023, Plaintiff claims that that very intrusion violated the Fourth Amendment, federal civil-rights statutes (18 U.S.C. §§ 241, 242), and an Arkansas criminal-trespassing law (Arkansas Code § 5-39-203). *Id.*, ¶¶ 28–46.

Memorandum at 2.

The Court in that case dismissed all of Plaintiff's claims for lack of jurisdiction, finding,

*inter alia*, that Plaintiff's claims against the State of Arkansas, DHS and DOI were barred under

the doctrine of sovereign immunity;  that his claims against Crisman, Davidson and Henry were

also barred under the doctrine of sovereign immunity to the extent they were sued in their official

---

[4] claim challenging DOI's response to his FOIA request related to the 2017 alleged unlawful entry into his home based on failure to exhaust; it also dismissed a claim under the Civil Service Reform Act on the basis that it was moot.  *See Wine v. Dep't of the Interior*, No. 1:21-CV-03349 (TNM), 2022 WL 17668791, at *2 (D.D.C. Dec. 14, 2022).
[4] In the Memorandum, the court assumed (as must this Court) that the facts pled in the complaint were true.

United States District Court
Northern District of California

1    capacities; and that the court did not have personal jurisdiction over any of the individual

2    defendants to the extent they were sued in their personal capacities. The MSPB was not named as

3    a defendant in the D.C. Action.  The court in that case observed that the defendants had presented

4    "a veritable smorgasbord of defenses to Plaintiff's suit" but that it would address "only a selection

5    of the most obvious and dispositive arguments."  Memorandum at 4.

6        **C.    Administrative Proceedings**

7        Plaintiff has engaged in extensive litigation related to the underlying events in this case,

8    including administrative proceedings before the MSPB  and court cases in the D.C. District Court,

9    the Federal Circuit and Arkansas State Court.  The Court provides here only a brief summary of

10    the proceedings relevant to Plaintiff's allegations, drawn from summaries contained in the two

11    MSPB decisions Plaintiff challenges in this case, the 116 Case, dkt. no. 22-3 (Feb. 5, 2025 MSPB

12    Decision ("Feb. 5 Dec.")) and the 451 Case, dkt. no. 22-4 (Mar. 7, 2025 MSPB Decision ("Mar. 7

13    Dec.")).

14        Plaintiff worked for the Fish and Wilde Service ("FWS") between July 2003 and April

15    2018.  Mar. 7 Dec. at 2. On November 9, 2017, DOI proposed to remove Plaintiff from his

16    position.  Feb. 5 Dec. at 2.  On December 8, 2017, DOI implemented the removal. Feb. 5 Dec. at

17    2. On December 18, 2017, Plaintiff timely appealed the removal by initiating the 116 Case before

18    the MSPB. *Id.* (citing *Wine v. Department of the Interior*, MSPB Docket No. DA-0752-18-0116-I-

19    1).  With the assistance of a settlement judge, the parties entered into a settlement agreement in the

20    116 Case and submitted a Joint Motion to Cancel the Hearing, which included the fully executed

21    settlement agreement that was to be effective April 27, 2017.  *Id.* The administrative judge

22    therefore dismissed the appeal in the 116 Case on the basis that the case was settled. *Id.*

23    Subsequently, Plaintiff filed numerous petitions for enforcement of the settlement agreement in

24    the 116 Case and asserted in some of the later petitions that the settlement agreement should be

25    rescinded because it was coerced.  Feb. 5, 2025 Dec. at 2-4, 11-12.  Plaintiff's requests to rescind

26    the settlement agreement were rejected.  *Id.* at 11-12.

27        The 451 Case involved a complaint related to DOI's rejection of Plaintiff's application for

28    a position with FWS, for which he applied in March of 2024.  Mar. 7 Dec. at 4.  This case was

1    docketed as an individual right of action ("IRA") appeal. *Id.* at 1. Plaintiff claimed that he was

2    rejected for the position due to his prior whistleblowing complaint. *Id.* at 9. Following a hearing,

3    the administrative judge ultimately dismissed the case as a sanction, finding that Plaintiff had

4    engaged in various forms of improper conduct during the course of the proceedings and that his

5    application for the FWS position was not "not a good faith application for a job that he would be

6    ready, willing, and able to perform if selected" but was, instead, a bad faith attempt to use the

7    litigation process to "obtain discovery of redacted materials related to the 2017 alleged home

8    invasion, despite repeatedly raising this issue in other Board appeals and in District Court." *Id.* at

9    14-16.

**D.    Pending Motions**

**1.    Federal Defendants' Motion**

12    The Federal Defendants contend this Court lacks subject matter jurisdiction over Plaintiff's

13    challenges to the MSPB's decisions in the 611 and 451 Cases under 5 U.S.C. § 7703 because

14    neither was a "mixed case" involving " 'an action which the employee or applicant may appeal to

15    the [MSPB]' and an allegation 'that a basis for the action was discrimination prohibited by'

16    enumerated federal antidiscrimination statutes." Agency Defendants' Motion at 7-10.  They

17    further assert that the Civil Service Reform Act ("CSRA") preempts Plaintiff's claims under 5

18    U.S.C. §§ 2302(b)(13) and (b)(14), thus depriving the Court of subject matter jurisdiction over

19    those claims. *Id.* at 10-11.   Defendants argue that the doctrine of sovereign immunity also bars all

20    of Plaintiff's claims against MSPB, DOI and DHS, as well as all of his official-capacity claims

21    against Davidson and Henry.  *Id.* at 11-12. Finally, Defendants argues that this Court lacks

22    personal jurisdiction over Davidson and Henry and therefore, that Plaintiff's personal capacity

23    claims against those defendants must also be dismissed.

**2.    Crisman Motion**

25    Defendant Crisman is a former employee of the Arkansas State Game and Fish

26    Commission. Crisman Motion at 1.  He asserts that Plaintiff's claims should be dismissed with

27    prejudice based on lack of personal jurisdiction and, to the extent Plaintiff sues him in his official

28    capacity, under the doctrine of sovereign immunity.  *Id.* at 4-7. Crisman further contends

United States District Court
Northern District of California

1    Plaintiff's fails to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure

2    because the allegedly unlawful entry onto his property was in 2017 and therefore, any claim based

3    on violation of his constitutional rights is barred by the applicable statute of limitations.  *Id.*  at 7.

4    In any event, Crisman asserts, Plaintiff's allegations are not sufficient to establish that his

5    constitutional rights were violated because he alleges only that Crisman entered the curtilage of his

6    home.  *Id.* at 7-8.  Finally, Crisman argues that the claims against him should be dismissed under

7    the doctrine of *forum non conveniens. Id.* at 8-9.

8                    **3.  Arkansas Motion**

9            In the Arkansas Motion, Defendants assert, as a preliminary matter, that Governor Sarah

10   Sanders was not named as a defendant in the operative complaint and therefore, she should be

11   dismissed on that basis.  Arkansas Motion at 4 n. 3.  They further assert that Plaintiff's claims

12   against the State of Arkansas and Governor Sanders (assuming she is properly named as a

13   defendant in this case) should be dismissed for lack of personal jurisdiction and under the doctrine

14   of sovereign immunity.  *Id.*  at 4-7.  Defendants further assert that any claims against Sanders and

15   the State of Arkansas are time-barred and that Plaintiff fails to state any viable claim against them.

16   *Id.* at 7-8.  Finally, they argue the claims against them should be dismissed under the doctrine of

17   *forum non conveniens*.

18                   **4.  Declaratory Relief Motion**

19           Plaintiff brings a motion seeking declaratory judgment that: 1) "Plaintiff's administrative

20   remedies with the Office of Special Counsel (OSC) are precluded into perpetuity based on

21   indisputable material evidence provided to this court; and 2) "material evidence of record

22   demonstrates that Defendant actions are directly related to and responsible for Plaintiff's medical

23   condition(s)."  Declaratory Relief Motion, ¶¶ 1, 5. He also seeks "injunctive relief in the form of a

24   court order ceasing the criminal prosecution of Plaintiff in Pulaski County Arkansas case LRCR-

25   25-3362," where Plaintiff alleges he "is being maliciously prosecuted by Defendant State of

26   Arkansas in a case that is underlain by a parent case that was unlawfully transferred from district

27   to circuit court, and which is being used to deter and/or prevent the instant proceeding." *Id.*  ¶ 6.

28   Plaintiff "requests transfer of this motion to an appropriate court of jurisdiction if this court refuses

1 to assert jurisdiction but reminds the court that this tribunal is the only forum of proper jurisdiction

2 given all material facts." *Id.* ¶ 13.

3 **III.    ANALYSIS**

4        **A.    Motions to Dismiss**

5              **1.  Legal Standards Under Rule 12(b)(1)**

6        Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must

7 dismiss an action if it lacks jurisdiction over the subject matter of the suit.  *See* Fed. R. Civ. P.

8 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a

9 continuing independent obligation to determine whether subject-matter jurisdiction exists."

10 *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal

11 quotation marks and citations omitted).  On a motion to dismiss for lack of subject matter

12 jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject

13 matter jurisdiction.  *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir.

14 2008).

15        A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a

16 facial challenge or a factual challenge.  *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  In

17 evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations

18 in the complaint as true.  *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).  Where a

19 defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to

20 matters of public record without having to convert the motion into one for summary judgment."

21 *White*, 227 F.3d at 1242 (citation omitted).  Once the moving party has made a factual challenge

22 by offering affidavits or other evidence to dispute the allegations in the complaint, the party

23 opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden

24 of establishing that the court, in fact, possesses subject matter jurisdiction."  *Colwell v. Dep't of

25 Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*,

26 880 F.2d 199, 201 (9th Cir. 1989)).

27              **2.  Legal Standards Under Rule 12(b)(2)**

28        A party may move for dismissal under Rule 12(b)(2) of the Federal Rules of Civil

Procedure for lack of personal jurisdiction. "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.3d 1357, 1361 (9th Cir.1990)). "Although the plaintiff 'cannot simply rest on the bare allegations of its complaint,' … uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Motor Corp.*, 374 F.3d 797, 800 (9th Cir. 1998) (quoting *Amba Marketing Systems, Inc. v. Jobar International, Inc*., 551 F.2d 784, 787 (9th Cir.1977)). favor."

### 3. Legal Standards Under Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### 4. Whether this Court has Subject Matter Jurisdiction over Plaintiff's MSPB Appeals

The administrative regime that governs workplace protections for federal employees is "highly complicated." *Crowe v. Wormuth*, 74 F.4th 1011, 1022 (9th Cir. 2023). The Court does not attempt to provide a comprehensive description of that regime but instead describes only the aspects of it that are necessary to address Defendants' challenges to subject matter jurisdiction in this case.

The CSRA, 5 U.S.C. §§ 1101 *et seq.*, "establishes a framework for evaluating personnel actions taken against federal employees . . . [that] provides graduated procedural protections depending on an action's severity." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). For major personnel actions, such as removal, an employee is entitled to appeal the agency's decision directly to the MSPB. 5 U.S.C. §§ 7512, 7513(d)). In general, if the employee does not prevail before the MSPB, an appeal may be taken only to the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1)(A). There is an exception, however, when the employee files a "mixed case complaint," that is, " 'a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB).' " *Crowe*, 74 F.3d at 1023 (quoting 29 C.F.R. § 1614.302(a)(1)); *see also* 5 U.S.C. § 7702(a)(1)(A) & (B) (providing that a mixed case is "an action which the employee or applicant may appeal to the [MSPB]," and that also includes an allegation that a basis for the action was prohibited discrimination). In that case, an employee's appeal must be filed in federal district court. 5 U.S.C. §§ 7702(a)(1), 7703(b)(2).

To challenge less serious personnel actions categorized as "prohibited personnel practices," the employee must first file a complaint in the Office of Special Counsel ("OSC") before proceeding to the MSPB. 5 U.S.C. § 1214(a)(3). However, where the complaint alleges a violation of the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 1221, the employee may "seek corrective action from the [MSPB]" via an IRA appeal even if the OSC does not act on a complaint. 5 U.S.C. § 1221(a). The employee is then entitled to seek judicial review of the MSPB's decision on a WPA claim either in the Federal Circuit or in "any court of appeals of

competent jurisdiction." 5 U.S.C. § 7703(b)(1)(B).

Here, neither of the administrative actions that are the subject of Plaintiff's appeal is a mixed case. As Plaintiff concedes in his Opposition, dkt. no. 24 ¶ 5, the 451 Case was docketed as an IRA appeal. As a matter of law, an IRA whistleblower case cannot be a mixed case because in such a case the MSPB's "review is limited to the merits of allegations of violations of the Whistleblower Protection Act. Discrimination claims may not be raised in that context." *Young v. Merit Sys. Prot. Bd*., 961 F.3d 1323, 1327 (Fed. Cir. 2020) (citing 5 C.F.R. § 1209.2(c)). Moreover, in the 451 Case, Plaintiff alleged that he was denied the DOI position due his whistleblowing activity and not based on discrimination on the basis of race; color; religion; sex; national origin; disability; age; genetic information; or pregnancy, childbirth, or related medical conditions. Therefore, to the extent he seeks to appeal the decision in that case, this Court does not have jurisdiction over his appeal.

Likewise, the 116 Case is not a mixed case and therefore cannot be appealed to this Court. One of the requirements of a mixed case is that the action is one that the employee or applicant may appeal to the MSPB. 5 U.S.C. § 7702(a)(1)(A). However, "breach of a settlement agreement by the government it is not one of those agency actions described as being appealable to the [MSPB]. It is not, therefore, an action described in 5 U.S.C. § 7702(a)(1)(A) which will support a mixed case." *King v. Reid*, 59 F.3d 1215, 1218 (Fed. Cir. 1995). In *King*, the court explained:

> [The MSPB's] jurisdiction over appealable actions is limited to those set out in a law, rule, or regulation. 5 U.S.C. § 1204(a)(1). Although employees may petition the [MSPB] to exercise its preexisting jurisdiction to enforce settlement agreements already entered into the record, the [MSPB] is not then acting under its § 1204(a)(1) authority. *See Amin v. Merit Sys. Protection Bd*., 951 F.2d 1247, 1252 (Fed.Cir.1991) (distinguishing between appeals that are resolved by settlements and later filed petitions to enforce the settlements, but recognizing the petitions may raise issues intertwined with the merits of the original appeal); *see also Perry v. Department of Army*, 992 F.2d 1575, 1577 (Fed.Cir.1993). Once a settlement agreement has been entered into the record, the original appealable action is withdrawn or dismissed. The [MSPB] retains jurisdiction over a settlement agreement made part of the record pursuant to its power under 5 U.S.C. § 1204(a)(2) to enter and enforce its own orders.

*Id.* at 1218. Thus, even if the agency's noncompliance with the settlement agreement is alleged to have been based on discrimination, the MSPB may not address that issue in an enforcement

United States District Court
Northern District of California

action. *Id.* at 1219. Rather, the MSPB may only address whether the agency breached the settlement agreement and therefore violated the MSPB's Order. *Id.*; *see also Oja v. Dep't of Army,* 405 F.3d 1349, 1355 (Fed. Cir. 2005) ("Our law on this issue is clear. '[A] claim of discrimination contained in a petition to enforce a settlement agreement does not give rise to mixed case status.' . . . This is so because a breach by the agency is not an action appealable to the Board pursuant to 5 U.S.C. § 1204(a)(1) and is therefore not an action described in 5 U.S.C. § 7702(a)(1)(A) as [is] needed to support a mixed case.") (citing *King,* 59 F.3d at 1218). Thus, because Plaintiff's appeal of the 116 Case involves a challenge to the validity of the settlement agreement in that case, Plaintiff's appeal cannot be a mixed case.

In sum, because the administrative decisions by the MSPB that Plaintiff challenges are not mixed cases, the Court finds, as a matter of law, that this Court does not have jurisdiction over Plaintiff's appeal of those decisions.

### 5. Whether this Court has Subject Matter Jurisdiction Over Plaintiff's CSRA Claims

Plaintiff alleges that Defendants violated 5 U.S.C. § 2302(b)(14), a subsection of the provision of the CSRA that enumerates "prohibited personnel practices," on the basis that they "accessed Plaintiff's medical records prior to the breaking and entering of Plaintiff's property" in December 2017. FAC ¶ 5; *see also id.* at ECF p. 2 (invoking 5 U.S.C. § 2302(b)(13) and (14) in support of federal jurisdiction). However, the remedial scheme established under the CSRA is "both exclusive and preemptive because 'permit[ting] FTCA claims to supplant the CSRA's remedial scheme' would defeat Congress' purpose of creating 'a single system of procedures and remedies, subject to judicial review.' " *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (quoting *Rivera v. United States*, 924 F.2d 948, 951 (9th Cir. 1991)). Thus, "where Congress has provided a process for processing prohibited personnel practices, other potential employee remedies are preempted." *Id.* (citing *United States v. Fausto*, 484 U.S. 439, 455 (1988)).

To the extent that Plaintiff asserts that Defendants violated Section 2302(b)(13) and (14), he is limited to the procedures set forth in the CSRA, such as filing a complaint with OSC under 5

1   U.S.C. § 1214.   As discussed above, because Plaintiff does not bring a mixed case, the CSRA

2   does not provide for jurisdiction in this Court over Plaintiff's claims.

3         The letter that Plaintiff has submitted reflecting that OSC may have refused to hear any

4   further complaints from Plaintiff does not change the Court's conclusion.  *See* dkt. no. 24 at ECF

5   p. 7. The Ninth Circuit held in *Mangano* that "a federal employee's personnel-related complaints

6   are preempted 'even if no remedy [is] available . . . under the CSRA.' " 529 F.3d at 1246 (quoting

7   *Collins v. Bender*, 195 F.3d 1076, 1079 (9th Cir.1999)). Thus, Plaintiff's claim under the CSRA

8   may not be adjudicated by this Court.

### 6.   Whether Sovereign Immunity Bars Claims Against Federal Agency Defendants

10        Under the doctrine of sovereign immunity, "[t]he United States, as sovereign, is immune

11  from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941).

12  "[C]onsent may not be implied but must be 'unequivocally expressed.' " *Consejo de Desarrollo*

13  *Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007). "In an

14  official-capacity claim, the relief sought is only nominally against the official and in fact is against

15  the official's office and thus the sovereign itself." *Lewis v. Clarke*, 581 U.S. 155, 163 (2017).

16  Thus, sovereign immunity protects not only government agencies but also federal employees

17  acting in their official capacities for those agencies.  *Id.*.

18        The United States has not waived its sovereign immunity for constitutional tort claims.

19  *Ardalan v. McHugh*, No. 13-CV-01138-LHK, 2013 WL 6212710, at *10 (N.D. Cal. Nov. 27,

20  2013) (citing *Consejo de Desarollo Economico de Mexicali, A.C.*, 482 F.3d at 1173);  *see also*

21  *Harris v. Holder,* 885 F. Supp. 2d 390, 397 (D.D.C. 2012) ("The United States has not waived its

22  sovereign immunity for constitutional tort claims. . . . In addition, sovereign immunity extends to

23  governmental agencies . . . and to their employees where such employees are sued in their official

24  capacities) (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477 (1994) (stating that

25  sovereign immunity precludes damage claims against the United States government for

26  constitutional violations brought under the Federal Tort Claims Act))  Furthermore, the Ninth

27  Circuit has held that sovereign immunity bars claims against federal agencies under 42 U.S.C. §

28

United States District Court
Northern District of California

1    1983. *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011) ("We find no evidence in either

2    statute that Congress intended to subject federal agencies to § 1983 and § 1985 liability.") Thus, to

3    the extent Plaintiff asserts claims based on alleged violation of his Fourth Amendment rights,

4    those claims are barred as to the Federal Agency Defendants under the doctrine of sovereign

5    immunity.[5]

6         Sovereign immunity also bars Plaintiff's claims against the Agency Defendants under the

7    Rehabilitation Act. To sue under the Rehabilitation Act, an individual must first exhaust their

8    administrative remedies by bringing their claim before the employing agency itself – here, DOI.

9    *Barkley v. U.S. Marshals Serv. ex rel. Hylton*, 766 F.3d 25, 34 (D.C. Cir. 2014);  29 U.S.C. §

10    794a(a)(1).  Because the exhaustion requirement is a condition on the federal government's waiver

11    of sovereign immunity, it requires strict adherence. *Barkley*, 766 F.3d at 34.    Here, Plaintiff has

12    not alleged that he raised any Rehabilitation Act claim before DOI and therefore this Court lacks

13    jurisdiction over that claim.  *See Wine v. Dep't of the Interior*, No. 1:21-CV-3349 (TNM), 2022

14    WL 3715799, at *5 (D.D.C. Aug. 29, 2022) (dismissing Rehabilitation Act claim for failure to

15    exhaust administrative remedies).

16         Accordingly, the Court finds that it lacks subject matter jurisdiction over all of Plaintiff's

17    claims against the Federal Agency Defendants.

18        **7.  Whether Sovereign Immunity Bars Claims Against Sanders and Crisman in**
       **their Official Capacities and the State of Arkansas**

19         As a preliminary matter, the Court finds that Sarah Sanders was not named as a defendant

20    in either the original complaint or the amended complaint.  Accordingly, she is not now and never

21    has been a defendant in this case.  This issue was raised in the Arkansas Motion and Plaintiff did

22    not argue in his Opposition brief that he intended to name Sanders as a Defendant.  Therefore, the

23    Court need not address the arguments in the Arkansas Motion as they relate to Sanders.   As to the

24    State of Arkansas and Crisman in his official capacity, the Court finds Plaintiff's claims are barred

25

26    _____

27    [5] Plaintiff also may be asserting claims under 18 U.S.C. §§ 241 and 242 against the Agency
Defendants.  However, these are criminal statutes and do not give rise to a private cause of action.
*Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006) ("We affirm the dismissal of

28    Allen's claims under 18 U.S.C. §§ 241 and 242 because these are criminal statutes that do not give
rise to civil liability.").

United States District Court
Northern District of California

1  under the doctrine of sovereign immunity.

2       The Supreme Court has "understood the Eleventh Amendment to confirm the structural

3  understanding that States entered the Union with their sovereign immunity intact, unlimited by Article

4  III's jurisdictional grant." *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011).

5  Therefore, "absent waiver" by a state itself, or "valid abrogation" by Congress, "federal courts may not

6  entertain a private person's suit against a State." *Id*. at 254. The same principles apply to state officials

7  sued in their official capacity for monetary damages. *See Will v. Michigan Dep't of State Police*, 491

8  U.S. 58, 71 & n.10 (1989) ("[A] suit [for damages] against a state official in his or her official capacity

9  . . . is no different from a suit against the State itself.").

10       There are two exceptions to this doctrine.  First, under *Ex parte Young*, 209 U.S. 123

11  (1908), a plaintiff may maintain a suit for prospective relief against a state official in their official

12  capacity, when that suit seeks to correct an ongoing violation of the Constitution or federal law.

13  *See Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008).  "In determining

14  whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need

15  only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation

16  of federal law and seeks relief properly characterized as prospective.' " *Verizon Maryland, Inc. v.*

17  *Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe*

18  *of Idaho*, 521 U.S. 261, 296 (1997)).

19       Second, under the *ultra vires* doctrine, the Eleventh Amendment does not apply to conduct

20  by a state official that is "undertaken without any authority whatever" where the plaintiff seeks

21  "specific relief" rather than monetary compensation.  *Fla. Dep't of State v. Treasure Salvors, Inc*.,

22  458 U.S. 670, 697 (1982); *Larson v. Domestic & Foreign Com. Corp*., 337 U.S. 682, 689 (1949)

23  ("There may be, of course, suits for specific relief against officers of the sovereign which are not

24  suits against the sovereign. . . . [W]here the officer's powers are limited by statute, his actions

25  beyond those limitations are considered individual and not sovereign actions. The officer is not

26  doing the business which the sovereign has empowered him to do or he is doing it in a way which

27  the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made

28  the object of specific relief.").

Here, it appears that Plaintiff seeks to invoke both exceptions to Eleventh Amendment immunity, asserting that conduct of Arkansas officials was *ultra vires* and that defendants are involved in an ongoing conspiracy to deprive him of his constitutional rights that began with the alleged unlawful break-in in 2017 and was followed by ongoing malicious prosecutions in Arkansas state court.  Dkt. no. 33 (Opposition to Arkansas Motion) ¶¶ 1-6.  Plaintiff states that he "intends to seek injunctive relief related to ongoing criminal prosecution(s) in state courts" (as indeed, he has done in his Declaratory Relief Motion) and asserts that he should be permitted to pursue discovery about Defendants' ongoing constitutional violations.  *Id.*  ¶¶ 8-9.

The Court finds Plaintiff's arguments unpersuasive.  First, in the operative complaint Plaintiff seeks monetary compensation rather than other "specific relief."  Consequently, neither of the exceptions to sovereign immunity discussed above applies.  Second, Plaintiff's allegations that Arkansas state officials have engaged in an ongoing conspiracy to violate his constitutional rights are entirely conclusory and do not meet the requirements of *Iqbal*, 556 U.S at 678.  Therefore, the Court finds that Plaintiff's claims against the State of Arkansas and Crisman in his official capacity are barred by the Eleventh Amendment.

### 8.  Whether the Court has Personal Jurisdiction of Davidson, Henry or Crisman

#### a.  Legal Standards

"Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits."  *Dole Food Company, Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir. 2002).  "Under California's long-arm statute, California state courts may exercise personal jurisdiction 'on any basis not inconsistent with the Constitution of this state or of the United States.'"  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (quoting Cal. Civ. Proc. Code § 410.10).  Thus, the Court must determine whether the exercise of personal jurisdiction over the individuals sued in their personal capacity "comports with the limits imposed by federal due process."  *Id*. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 464 (1985)).

"Opinions in the wake of the pathmarking *International Shoe* decision have differentiated

between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9 (1984)).   General jurisdiction may be established when a defendant's contacts with a state are "substantial" or "continuous and systematic" such that the defendant "can be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. at 924.   Here, Plaintiff does not dispute that none of the individuals sued in their personal capacities has "continuous systematic ties" to the State of California.  Therefore, the Court must determine whether there is specific jurisdiction over these individuals.

A court may exercise specific jurisdiction when the following requirements are met:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Dole Food*, 303 F.3d at 1111 (internal quotations and citations omitted).  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004) (*citing Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*  If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

b.  Discussion

In his opposition briefs, Plaintiff does not allege specific facts showing that the three

individuals sued in their personal capacities purposefully directed any activities related to Plaintiff's claims towards California. Instead, Plaintiff argues only that this Court has jurisdiction over his claims generally because "the federal government chose to move Plaintiff's MSPB hearing within the boundaries of the northern district of California to enlist the help of Judge Borrowman in continuation of the conspiracy between all Defendants to deprive Plaintiff of his rights under color of law." Dkt. no. 24 (Opposition to Federal Agency Defendants' Motion) ¶ 19; *see also* dkt. no. 28 (Opposition to Crisman Motion) ¶ 11 ("The conspiracy detailed in Plaintiff's complaint(s) and herein was directed to the Northern District of California by Defendants, not by Plaintiff, thus Crisman has sufficient ties to California as part of the conspiracy to deprive Plaintiff of his rights under color of law, *inter alia*."); dkt. no. 33 (Opposition to Arkansas Motion) ¶ 7 ("Plaintiff had no part in directing the MSPB case to the Northern District of California and this was the work of Defendants in conspiracy with one another such that each party falls under the jurisdiction of this court, thus there is no question that jurisdiction is appropriate in this tribunal."). Plaintiff's argument fails, both because the allegations of a conspiracy are entirely conclusory, as discussed above, and because "jurisdiction over each defendant must be established individually." *Sher v. Johnson*, 911 F.2d 1357, 1365 (9th Cir. 1990). Therefore, Plaintiff has failed to establish that the Court has personal jurisdiction over any of the individual defendants to the extent Plaintiff sues them in their personal capacities.

As to Adrian and Henry, Plaintiff has failed to establish that this Court may exercise jurisdiction for the additional reason that Plaintiff has purported to serve them by sending certified copies of the complaint to the Department of Homeland Security, which is insufficient. *See* dkt. no. 21. Plaintiff's claims for damages against Adrian and Henry, who are federal officials who were acting under color of law, may only be asserted under *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388, (1971). *Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987). Furthermore, "where money damages are sought through a *Bivens* claim, personal service, and not service at the place of employment, is necessary to obtain jurisdiction over a defendant in his capacity as an individual." *Id.* Therefore, Plaintiff has not properly served Adrian and Henry and this Court does not have jurisdiction over them for this additional reason.

### 9.  Whether Plaintiff's Claims Against Crisman are Time-Barred

Even assuming this Court may exercise personal jurisdiction over Crisman, Plaintiff's claims against him fail because they are untimely.  It appears that Plaintiff is seeking to assert a claim under 42 U.S.C. § 1983 and the Fourth Amendment based on Crisman's entry onto Plaintiff's property in December 2017. The applicable statute of limitations for a claim under Section 1983 is the statute of limitations established by the forum state for personal injury torts. *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  Hence, the statute of limitations for a Section 1983 claim brought in California is two years. *See* Cal. Code Civ. Proc. § 335.1 (establishing a two-year statute of limitations for personal injury actions).

"Federal law determines when a cause of action accrues and the statute of limitations begins to run for a § 1983 claim." *Bagley v. CMC Real Est. Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Under federal law, a § 1983 claim accrues when a plaintiff "knows or has reason to know of the injury which is the basis of the action." *Id.* (citation omitted).  It is clear from the allegations in the complaint that Plaintiff was aware of the alleged illegal entry onto his property at the time it occurred and therefore, he was required to initiate this action within two years of the December 14, 2017 events, that is, by December 14, 2019.  Furthermore, Plaintiff's assertion in his opposition brief that his claims against Crisman were "well within the statute of limitations" has no merit.  *See* dkt. no. 28 (Opposition to Crisman Motion) ¶ 4.  According to Plaintiff, he "litigated Defendant Crisman at the Arkansas State Claims Commission and in Stone County Arkansas case 69CV-20-67 on November 25, 2020, well within the statute of limitations but the case was dismissed after the judge illegally sentenced Plaintiff to jail for mere self representation." *Id.* Even assuming the Arkansas action tolled the two-year limitations period while it was pending, that action was filed *after* the statute of limitations on Plaintiff's claim against Crisman had already run.  Therefore, Plaintiff has not asserted any claim against Crisman that is not time-barred.

### B.    Declaratory Relief Motion

As discussed above, in his Declaratory Relief Motion, Plaintiff asks this Court for declaratory judgment that the OSC has barred him from obtaining relief in that forum and that

1
2
3

United States District Court
Northern District of California

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants' conduct is responsible for his medical condition. He also asks the Court to enjoin a pending criminal proceeding against him in Arkansas State Court. The Court DENIES Plaintiff's requests.

First, to the extent that Plaintiff asks the Court to enter judgment on his claims on the merits, the request is premature. In particular, if Plaintiff's request is asserted under Rule 12(c) of the Federal Rules of Civil Procedure, which allows a party to seek judgment on the pleadings once the pleadings are closed, Plaintiff's request is premature because the pleadings have not yet closed. If Plaintiff is seeking summary judgment in his favor under Rule 56 of the Federal Rules of Civil Procedure, the motion is premature because Plaintiff has not established that this Court has jurisdiction over any claims or defendants, as discussed above. *See Tyson v. ACRT Servs. Inc*., No. 23-CV-01889-HSG, 2024 WL 69073, at *7 (N.D. Cal. Jan. 5, 2024) (denying motion for summary judgment on the basis on the basis that it was premature where the plaintiff had "yet to establish he [had] a viable claim" and no discovery had been conducted in the case).

Similarly, to the extent he seeks a preliminary injunction, Plaintiff has not met his burden. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Because Plaintiff has not established that there is subject matter jurisdiction over this case or that this Court can exercise personal jurisdiction over the individuals sued in their personal capacities, Plaintiff has not demonstrated that he is likely to succeed on the merits and therefore, entry of a preliminary injunction is inappropriate.

Finally, although Plaintiff asks that this case be transferred "to an appropriate court of jurisdiction if this court refuses to assert jurisdiction[,]" Declaratory Relief Motion ¶ 13, Plaintiff has identified no jurisdiction where jurisdiction would be proper and it is not clear what jurisdiction, if any, would offer an appropriate forum for Plaintiff's claims. Therefore, that request is denied.

**C.    Whether Plaintiff Should Be Permitted to Amend or to Conduct Discovery Prior to Dismissal**

"Unless it is absolutely clear that no amendment can cure the defect … a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Smith v. Pac. Properties and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (holding that under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be "freely given" unless amendment will result in undue prejudice to the opposing party or will be futile).   Here, the Court finds that amendment is futile because Plaintiff has pointed to no possible amendments to his complaint that would establish that this Court has subject matter jurisdiction over his claims or personal jurisdiction over the individual defendants.  Further, although Plaintiff contends he should be permitted to conduct discovery that he believes would provide further evidence of an alleged conspiracy among the defendants in this case, he has not identified discovery that would have any bearing on the jurisdictional defects identified herein. Therefore, the Court concludes that dismissal if this case, in its entirety and without leave to amend, is appropriate.[6]

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the Motions to Dismiss and DENIES the Declaratory Relief Motion.  The Court dismisses this case, in its entirety, without prejudice.  The Clerk is instructed to enter a separate judgment reflecting that this case is dismissed without prejudice for the reasons stated herein.  In addition, because Sarah Huckabee Sanders was

---

[6] The Court declines, however, the invitation of the Arkansas defendants to dismiss Plaintiff's claims with prejudice.  *See* Arkansas Motion at 10; Crisman Motion at 9. "Ordinarily, a case dismissed for lack of subject matter jurisdiction should be dismissed without prejudice so that a plaintiff may reassert his claims in a competent court." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988). While it is not clear what court might be able to hear Plaintiff's claims, it is not the role of this Court to preclude Plaintiff from asserting his claims in such a court, should there be one.

United States District Court
Northern District of California

erroneously listed on the docket of this case as a defendant, the Clerk shall terminate Sarah

Huckabee Sanders as a defendant.

**IT IS SO ORDERED.**

Dated:  October 7, 2025

_____
JOSEPH C. SPERO
United States Magistrate Judge